JOSEPH W. BALLENTINE, trustee &c.,

*v.*

JOHN B. WOOD et al.

A testator devised certain lands, in trust, for the benefit of his wife and five children for their lives, and, after the death of the surviving child, the trust to cease and the land be sold and the proceeds divided among the "right heirs" of his children as tenants in common, the issue of any child to take their parent's share—*Held,* that such grandchild had a vested remainder in the residuary devise, subject to open and let in any brother or sister.

Bill for relief. On exceptions to master's report and applica-

tion for instructions as to distribution of money in the hands of trustees.

Mr. *J. Augustus Fay, Jr.*, for complainant.

Mr. *H. C. Pitney*, for Helen B. Wood.

Mr. *W. L. Dayton*, for John B. Wood and others.

Mr. *A. Flanders*, for John De Camp and others.

THE CHANCELLOR.

Two objections are presented under the exceptions to the master's report. One is that the master has reported an allowance of commissions to the complainant, and the other is as to the amount of such allowance.

It was proper and necessary to establish the amount of commissions in taking the account of the trustee, in order that distribution might be ordered.

The master has allowed the trustee three per cent. additional commissions upon $35,194.95 of income upon which the trustee in his first account was allowed two per cent. commissions. I see no reason for making this extra allowance. In his intermediate account, filed in 1877, to which the master refers as the first intermediate account, the orphans court fixed the trustee's commissions upon the income received up to that time. The agreement made by the exceptants in 1880 that the trustee should receive five per cent. commissions on the gross receipts of the estate, provided that he should not receive more than $500 in any year or in a greater proportion for any part of a year, expressly provided also that it should be retroactive, so that the sum to be allowed to the trustee upon his second accounting should be determined on the basis thereof, but that it should have no other retroactive effect. The master has applied it to the first accounting. Therefore, so far as the exceptants are concerned, the award of commissions upon the $35,194.95 is unlawful. The agreement upon the same subject, made by other

persons interested in the estate, covered the whole period from the beginning of the trustee's administration. The exception must be allowed.

A question was presented upon the argument (but not under the exceptions) as to the right of Mrs. Helen B. Wood to participate in the distribution of the moneys in the hands of the trustee.

James Wood, deceased, by his will devised to his executors, as trustees, certain specified lands, in trust, to permit his wife to occupy for life, or so long as she should remain his widow, certain parts of that property ; to lease the rest (and after her death or remarriage to lease it all), and after deducting the necessary expenses of repairs, improvements and insurance, to pay over the net proceeds arising from the rents to his wife so long as she should remain his widow, and his five children, William N., Sarah Ann, Jane Elizabeth, Theodore T. and Laura Louisa, share and share alike ; and after the death or marriage of his wife to pay over such net proceeds arising from the rents to his before-mentioned five children in equal shares ; and in case of the death of any one or more of his children without leaving lawful issue, then to pay over the share or shares of such deceased child or children to his, the testator's, surviving child or children in equal parts or shares ; and in case of the death of any of his children, leaving lawful issue, then to pay over his or her share to and among said issue in equal parts or shares.

The testator gave power to the executors, at their discretion, to sell parts of the property, and provided that in case of sale the proceeds of sale should be invested, and that the interest should be paid over to and among his children, or their lawful issue, as directed in regard to the rents and profits of the property. He then provided that from and after the death of all his children the trust thereby created should cease and determine, and that the several tracts or parcels of land and premises thereinbefore mentioned and described (except so much thereof as might be sold by the executors) should go and descend, freed and discharged from all trusts whatever, to the respective right heirs of his children, in fee simple, to hold as tenants in common, and

not as joint tenants ; it being always understood that the child or children of any of his deceased children should take the part or share of the trust estate that the parent would have taken had the testator died intestate; and that in like manner all the moneys which the trustees, or the survivors or survivor of them, or the heirs of the survivor of them, may then have on hand, together with all securities for money, be paid over, delivered or transferred to the respective right heirs of his, the testator's, beforementioned children—the child or children of each deceased child taking the part or share to which the parent would be entitled. The will contains a residuary clause disposing of the residue of the testator's real estate, but that provision was revoked by a codicil by which the testator gave and devised the residue of his real estate to his executors, and to the survivors and survivor of them, and to the heirs of the survivor, in trust, to sell such residue at discretion, or to mortgage it to pay his debts ; and he provided that the moneys arising from sale, or which might be borrowed on mortgage, together with the moneys due him on bonds, notes, books of account, stocks or otherwise, or so much thereof as might be necessary for the purpose, should be appropriated to the payment of his debts and the expenses incident to the settlement of his estate ; and he directed that the residue thereof should be invested and the dividends or interest thereof be paid over and divided to and among his five children ; and that whenever, in the opinion of his executors or a majority of them, any of his children should require more than his or her share of the interest or dividends for his or her comfortable support and maintenance, his executors, or a majority of them, might pay over and deliver to such child or children a part or the whole of his or her one-fifth part or other proportion of the principal moneys or other property constituting such residue ; and that at the death of any of his children, his or her part or share in such residue of the testator's estate be paid over to his or her child or children ; and that if any of his children should die, leaving no lawful issue, his or her part or share in the residue be paid to the testator's surviving child or children, and to the child or children of such of the testator's children as should have died leaving

Ballentine v. Wood.

children; it being always understood that the child or children are to take the part or share which their parent would have taken if living.

The testator's widow died in his lifetime. His children all survived him. The children are all dead. Two of the daughters died childless. Theodore T. Wood, one of the children of Theodore T. Wood, one of the testator's sons, survived his father, but died in the lifetime of the last survivor of the testator's children, without issue, leaving a widow, Helen B. Wood, to whom by his will he gave all his property. She claims to be entitled to an equal share with the children of her father-in-law who survived him. If the interest of her husband in the estate of his grandfather, the testator, was a vested interest, she is, as her husband's universal legatee and devisee, entitled to it.

It is urged by her counsel that the above-quoted provision of the codicil that the moneys arising from the sale of the testator's real estate includes in its terms and was intended by the testator to embrace the proceeds of the sale of the real estate specifically devised, as well as the proceeds of that which may be termed the residuary real estate. But it is quite clear that such a construction is inadmissible. By the clause of the will by which the testator disposed of the residuary real estate, he provided that his executors should sell that property, and that out of the proceeds of sale and the moneys due him upon bonds, notes, books of account, stocks or otherwise, his debts and the expenses of settling his estate should be paid, and he then disposed of the residue of those proceeds. By the before-mentioned codicil he revoked that devise and gave the property to his executors, in trust, to sell it or to raise money upon it by mortgage to pay his debts, and he then directed that the moneys arising from the sales of his real estate and which his executors might borrow on mortgage, together with the moneys due him on bonds, notes, books of account, stocks or otherwise, or so much thereof as should be necessary for the purpose, be appropriated by his executors to the payment of his debts and the expenses incident to the settlement of his estate, and he directed that the residue be invested and that the dividends or the interest thereof be paid

over and divided to and among his five children; and that at the death of any of his children, his or her part or share in such residue of his, the testator's, estate be paid over to his or her (the decedent's) child or children &c.    Although in the provision just quoted the testator gives direction as to the disposition of the proceeds of his real estate, and the language used by him, "the moneys arising from the sales of my real estate," is broad enough to include the proceeds of the sales of the land specifically devised, yet it is apparent from the context that he had in mind and referred only to the lands constituting the residue of his real estate.    The claim of Mrs. Wood as to the lands specifically devised or the proceeds thereof depends upon the construction to be given to the provision of the clause of the will by which those lands and proceeds are disposed of after the death of the testator's children.    That clause is as follows:

"And it is further my will that from and after the death of all my children, the trust hereby created shall cease and determine and the several tracts or parcels of land and premises hereinbefore mentioned and described (except so much thereof as may be sold as aforesaid) shall go and descend, freed and discharged from all trusts whatever, to the respective right heirs of my said children, in fee simple, to hold as tenants in common, and not as joint tenants; it being always understood that the child or children of any of my deceased children shall take the part or share of the said trust estate that the parent would have taken had I died intestate; and in like manner all the moneys which the said trustees, or the survivors or survivor of them, may then have on hand, together with all securities for money, be paid over, delivered or transferred to the respective right heirs of my said children, the child or children of each deceased child taking the part or share which the parent would be entitled to."

By the words "right heirs" in the clause, the testator meant children, as is evident from the accompanying qualifying provision that the child or children of any of his deceased children shall take the part or share that the parent would have taken. At the death of the last survivor of the testator's children the trust is to cease, and the property, if unsold, or if any shall have been sold, then so much as shall remain unsold and the proceeds of that part of it which shall have been sold, shall go to the testator's grandchildren.    The words "and descend" are merely

superfluous.    The word "descend" was used, not to express
descent in the legal sense, but devolution by force of the devise,
and the use of it was probably due to the fact that while the
gift for life was to parents, the gift in remainder was to children.
It is as if the testator had said "go down" to the children.  The
gift in remainder and the life estate vested at the same moment.
The grandchildren who were alive at the death of the testator
took the title to the remainder at his death by independent gift;
for while the gift in the first instance is to the trustees for the
life of the longest liver of the testator's children, the subsequent
provision is that at the death of the last survivor of the equitable
life tenants the trust is to be at an end and the property is to go
to the grandchildren.    But the estate taken by the grandchildren
at the testator's death was subject to the liability to open and let
in grandchildren born subsequently.    The amount of the inter-
est in each stock of grandchildren would therefore not be fixed
absolutely (except by the death of the parent life tenant) until
the death of the last survivor of the life tenants.  But, subject to
that liability to open, it was vested at the death of the testator.
Theodore T. Wood, Jr., therefore, at his death, had a vested
interest, which was subject to a liability to be diminished in
amount by the birth of other children of his father, but only
subject to that liability.    It is to be observed that the gift is to
the children individually, and not as a class; for it is expressly
made to them as tenants in common, and not as joint tenants.

The cases which support the construction which I have put
upon the provision under consideration are numerous.    Among
them may be mentioned *Wintermute* v. *Snyder, 2  Gr.  Ch.
489; Howell* v. *Green, 2  Vr. 570; Van Dyke* v. *Vanderpool, 1
McCart. 198; Feit's Exrs.* v. *Vanatta, 6  C.  E.  Gr.  84;
Beatty's Admr.* v. *Montgomery's Exr., Id.  324; Herbert* v.
*Post, 11  C.  E.  Gr.  278,* and *S.  C. on appeal, 12  C.  E.  Gr.  540.*
The cases cited by the counsel of those who oppose Mrs. Wood's
claim are not in point.    They are *Smith* v. *Butcher, L.  R.  (10
Ch. Div.) 113; Van Tilburgh* v. *Hollingshead, 1  McCart. 32,*
and *Slack* v. *Bird, 8  C.  E.  Gr.  238.*

In *Smith* v. *Butcher* there was a gift of personalty, in trust, for

the children of the testator's brother for life, with provision that on the death of either of them his or her share of the principal should go to his or her "lawful heirs." The words "lawful heirs" were held to be used in their ordinary sense. There was nothing in the context to prevent or militate against such construction. In *Van Tilburgh* v. *Hollingshead* the devise was to the testator's son, with provision that at his decease the property should go to his, the son's, "surviving children, according to law." It was held that the estate of the children was contingent upon their surviving their father, the rule being that where an interest is given to one for life, and after his death to his surviving children, those only can take who are alive at the time the distribution takes place.

*Slack* v. *Bird* was a similar case with a like decision.